# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **GEORGE R. DUQUETTE, M.D.,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.:  2:15-cv-0316-RDP |
| } | |
| **NATIONAL LIFE INSURANCE** } | |
| **COMPANY.,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OPINION

**I.    Introduction**

This case is before the court on Plaintiff's Motion for Partial Summary Judgment (Doc. # 21) and Defendant's Motion for Partial Summary Judgment (Doc. # 24), both of which were filed on March 31, 2016.  The Motions are fully briefed and supported by the parties' evidentiary submissions. (Docs. # 22, 23, 25, 26, 28, 29, 30, 31).

In this case, Plaintiff alleges Defendant violated its contractual obligations, acted in bad faith in denying one of his claims, and seeks a Declaratory Judgment that he is entitled to benefits from Defendant.  (Doc. # 1-1, ¶ 9-11).  Plaintiff contends that the undisputed facts show that Plaintiff's debilitating condition was caused by an accident (Doc. # 22, p. 11), and that Plaintiff is entitled to his partial/residual claim if a jury concludes that his notice was reasonable (Doc. # 22, p. 13).  Defendant contends that Plaintiff failed to satisfy the notice requirement of the policies on his partial/residual claim (Doc. # 25, pp. 17-23), Defendant is entitled to Summary Judgment as a matter of law on the issue of bad faith (Doc. # 25, pp. 23-29), and Plaintiff is not entitled to future benefits (Doc. # 25, pp. 29-30).  After careful review, the court

finds that Plaintiff's partial motion for summary judgment is due to be denied and Defendant's partial motion for summary judgment is due to be granted.

## II. Relevant Undisputed Facts[1]

Plaintiff has been a board certified plastic surgeon working in the Birmingham area for many years. (Doc. # 1-1). Plaintiff turned 65 on April 13, 2016. (*See* Doc. # 1-1, p. 6). Beginning in the 1980's, Plaintiff purchased six National Life disability insurance policies. (Docs. # 23-1; 23-2). The total monthly payout on these policies, upon a finding of total disability, would equal $14,100.00. (Doc. # 23-10, p. 5). Two of the six policies require notice of disability within twenty days after the commencement of any disability. (Doc. # 23-2). The remaining four policies require notice within thirty days. (*Id.*). All six policies allow for an exception to the notice requirement if notice cannot reasonably be given in the time specified, so long as the notice of disability is given as soon as possible. (*Id.*). All six policies agree to pay out their full amount if Plaintiff is totally disabled due to accident or sickness, so long as Plaintiff is under age 65. (*Id.*). For total disability due to sickness, the policies pay a reduced benefit amount after age 65. (Doc. # 23-1). That reduction is equal to 50% or 35% of the benefit, depending on Plaintiff's age at the total disability date. (*Id.*). If total disability occurs due to an accident, the total disability benefits are not reduced after age 65. (Doc. # 23-2).

In 1996, Plaintiff began experiencing neck pain and stiffness. (Doc. # 26-2, p. 2). This condition worsened, eventually requiring a two-level cervical fusion surgery at C5-7. (*Id.*). After the surgery, Plaintiff maintained a full and active surgical practice until April 2009. (*Id.*).

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Admr. U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Starting in April 2009, Plaintiff began having increased pain in his neck, muscle spasms, and began losing his full range of motion. (*Id.*). Between 2009 and 2011, Plaintiff began reducing his practice because of how difficult his condition made performing surgery. (*Id.*). At this time, Plaintiff did not inform Defendant that he was partially disabled because he did not want to be forced to end his practice. (Docs. #23-7, p. 36).

On December 25, 2011, Plaintiff was involved in an automobile accident which caused his condition to worsen, at least temporarily. (Doc. # 26-2, p. 2). This further limited his ability to perform surgeries and resulting in increased loss of income. (*Id.*). Plaintiff began experiencing paresthesia in his right arm and hand, though these symptoms eventually subsided. (Doc. # 26-2). Plaintiff then developed continuing pain, severe spine movement limitations, and paresthesia in his left arm and hand. (Doc. # 23-11, pp. 9-10). Because of these issues, Plaintiff discontinued working and closed his office on June 28, 2013. (Doc. #26-2). Plaintiff asserts that he became totally disabled on June 28, 2013, eighteen months after the accident, and that he continues to be totally disabled. (Doc. # 23-8, p. 19).

Plaintiff provided notice of his claim on July 20, 2013. (Doc. #26-2). Plaintiff asserted both a claim for residual disability benefits from January 1, 2009 to the date of his total disability, and a total disability claim based on his last day of work: June 28, 2013. (*Id.*). Defendant evaluated Plaintiff's total disability claim, and found him to be totally disabled due to the limitations Plaintiff had with his left arm. (Doc. # 23-10, pp. 6-7, 13-14).

Many medically trained experts have examined either Plaintiff or his medical records in an attempt to conclude whether Plaintiff's left arm issues were caused by his automobile accident. Plaintiff relies primarily on the testimony and opinion of his treating orthopedic surgeon, Dr. Jeffrey Wade. (*See* Doc. # 22, p. 4). Defendant relies on the testimony of Dr.

Wade, Dr. Kenneth Jaffre (Dr. Wade's partner), and Dr. Edward Dunn, a Fellow of the American Academy of Orthopedic Surgeons. (*See* Doc. # 25, p. 12).

These experts agree that Plaintiff's paresthesia, on either his left or right arm, did not exist prior to his accident. (Docs. # 23-8, pp. 9-10; 23-11, pp. 8-10). Drs. Dunn and Wade, the medical experts who spoke on the issue, agree that Plaintiff's pre-existing medical condition, degenerative disc disease, made Plaintiff more vulnerable to the exacerbation of his existing condition as a result of an injury, such as one sustained in an automobile accident. (Docs. # 23-8, p. 14; 23-11, p. 10).

After reviewing his claim, Defendant concluded that Plaintiff's total disability in June 2013 was caused by his degenerative disc disease, and not by his December 2011 automobile accident. (Doc. # 26-6, p. 19). Defendant made this determination after conducting its claim investigation, and reviewing the materials Plaintiff provided, his medical records, and the medical expert testimony submitted.[2] (Doc. # 26-6, pp. 19-20). Defendant did not evaluate Plaintiff's residual claim because Defendant believed that Plaintiff's four-and-a-half year delay in reporting that claim was not supported by a reasonable explanation. (Doc. # 23-10, p. 9).

## III.   Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of

---

[2] Plaintiff's second count alleges that Defendant acted in bad faith when it concluded that sickness, and not injury, caused Plaintiff's total disability. (Doc. # 1-1). Plaintiff contends that Defendant could not have used these sources to conclude that Plaintiff's total disability was caused by sickness because no reasonable person could make that conclusion based upon the objective evidence and facts. For reasons explained below, the court disagrees with this assertion.

informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and – by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file – designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("*Anderson*"). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. For Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson v. Liberty Lobby, Inc.*, teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Southwest Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

**IV.   Analysis**

Plaintiff advances two arguments in his Partial Motion for Summary Judgment. He contends that 1) there is no material dispute that his automobile accident was the proximate cause of his total disability, and 2) he is entitled to his partial/residual claim if a jury concludes that his failure to notify was reasonable. In support of his first argument, Plaintiff contends that all relevant medical examiners conclude that the accident was at least a partial cause of Plaintiff's injuries. Plaintiff further argues that based on the wording of Plaintiff's insurance policies, Defendant should have found that Plaintiff's total disability was caused by his accident. In support of his second argument regarding his residual claim, Plaintiff relies upon *Southern*

*Guaranty Ins. Co. v. Thomas*, 334 So.2d 879, 882 (Ala. 1976) and testimony from the record indicating that Defendant did not perform a substantial review of Plaintiff's claim.

Defendant, in turn, makes three arguments in support of its Partial Motion for Summary Judgment: 1) Defendant is entitled to summary judgment on Plaintiff's residual disability benefits because Plaintiff failed to satisfy the notice requirement under his policies, 2) Plaintiff's bad faith claims fail as a matter of law,[3] and 3) Plaintiff is not entitled to future benefits. As part of its first argument, Defendant contends that Plaintiff's excuses for his late notice are not objectively reasonable as a matter of law. Defendant's second argument is based upon the definition of the tort of bad faith as set forth in *State Farm Fire and Casualty Co. v. Brechbill*, 144 So. 3d 248 (Ala. 2013). In its third argument, Defendant asserts that Plaintiff is not entitled to any future monthly payments absent a repudiation of the contract by the obligor party.

### A.   The Cause of Plaintiff's Total Disability is a Jury Question

Plaintiff contends that there is undisputed medical evidence supporting his claim that an accident caused his total disability. The court disagrees. There exists a genuine dispute of fact related to the opinions of the medical experts on the question of whether Plaintiff's total disability was ultimately caused by his automobile accident or his degenerative disc disease.

In a December 2013 letter to Dr. Dunn, Dr. Wade opined that he believed "it is likely that [Plaintiff's] motor vehicle accident in December 2011 exaggerated his symptoms given the fact that he has preexisting severe and multilevel degenerative stenosis." (Doc. # 23-3, p. 2). During a very thorough deposition, Dr. Wade discussed his conclusions regarding Plaintiff's disability. Dr. Wade revealed that he believed Plaintiff's accident could have been a significant cause of his

---

[3] Defendant makes this argument for both Plaintiff's claim that his residual disability benefits were denied in bad faith, and Plaintiff's claim that the determination that his total disability was caused by sickness instead of from his accident.

current back problems.[4]  (Doc. # 23-8, p. 12).  In that same deposition, Dr. Wade was pressed on how Plaintiff's new left-side problems could be related to his accident when his original right-side problems were resolved.  Dr. Wade testified that although some of Plaintiff's physiological changes were likely caused by degeneration, "with this degree of stenosis, I was about to say would certainly be aggravated by the accident."  (Doc. # 23-8, p. 14).

Dr. Dunn disagrees with Dr. Wade.  Dr. Dunn believes that Plaintiff returned to his "baseline" health that he enjoyed before the accident because he "complained no longer of right-sided problems."  (Doc. # 23-11, p. 9).  Although Plaintiff developed left-sided issues, the accident can be disregarded as a cause of these issues because they developed "sixteen months later."  (*Id.*).  Dr. Dunn came to this conclusion after looking at Plaintiff's MRIs from the time of his accident, and comparing them with MRIs from 2009.  (Doc. # 23-11, p. 10).  Dr. Dunn admitted that he and Dr. Wade eventually came to different conclusions after examining the same evidence.  (Doc. # 23-11, p. 12).

Based upon these contradicting medical opinions, the court concludes there is a genuine issue of material fact as to the cause of Plaintiff's disability.  When two qualified and well-trained doctors reach two different conclusions and opine about them, there is a dispute of fact for a jury to resolve.  Plaintiff's Motion for Summary Judgment is due to be denied.

### B.    Plaintiff's Partial/Residual Disability Claim was Unreasonably Late

The court now addresses the parties' arguments regarding the timeliness of Plaintiff's partial/residual disability claim.  "[U]nder Alabama law there are only two factors to be considered in determining the reasonableness of a delay in giving notice to an insurer:

---

[4] Dr. Wade reached this opinion without the benefit of an MRI being taken the day before Plaintiff's accident.  Though this would clarify the true extent of Plaintiff's exacerbated condition, Dr. Wade opined "I would say it's equally as possible that he [Plaintiff] could have some subluxation from the accident as it is that he could have some further degenerative change." (Doc. # 23-8, p. 12).

the *length* of the delay and the *reasons* for the delay." *Southern Guaranty*, 334 So. 2d at 883 (emphasis added). "Where the facts are undisputed and only one conclusion is reasonably possible, the question whether or not the insured under a liability policy complied with the requirement of notice is a question of law for the court; but where the facts are disputed or more than one conclusion is reasonably possible, the question is one for the jury." *Lennon v. American Farmers Mut. Ins. Co.*, 208 Md. 424, 431 (1955).

Here, the facts are undisputed. Plaintiff chose not to inform Defendant of his ongoing health issues for more than four years because he did not want information about his health condition to affect his practice. Under Eleventh Circuit and Alabama State Court precedent, a five-month delay in giving notice is sufficiently protracted to require the insured to offer evidence of a reasonable excuse for the delay. *See Phoenix Assurance Co. v. Harry Harless Co.*, 303 F. Supp. 867 (N.D. Ala.), aff'd, 414 F.2d 794 (5th Cir. 1969) (four-month delay); *Pharr v. Continental Cas. Co.*, 429 So. 2d 1018 (Ala. 1983) (eight-month delay); *Southern Guaranty*, 334 So. 2d 879 (Ala. 1976) (six-month delay). While Plaintiff's desire to maintain his medical practice is certainly understandable, the question becomes whether a desire to shield an ongoing medical issue from patients is a reasonable rationale for not reporting the onset of a disabling condition to an insurer.

A four-year delay, such as the one that occurred here, is virtually unprecedented. And the court has no hesitation in concluding that seeking to avoid ending (or affecting) one's practice (by not informing his patients of his decreasing ability to perform plastic surgery) is simply not a reason that is sufficient to justify the lengthy delay in informing an insurer of such a condition involved here.

The court finds that the undisputed facts support the conclusion that Plaintiff was unreasonably late in notifying Defendant of his decreased capacity to work and did not have a sufficient reason for that delay. Based on this determination, the Defendant's motion for summary judgment on the issue of partial/residual benefits is due to be granted.

### C.    Plaintiff's Bad Faith Claims Fail as a Matter of Law

Count Two of Plaintiff's Complaint asserts a bad faith claim. A party asserting a bad faith claim has the burden of proving the following:

(a)    an insurance contract between the parties and a breach thereof by the insurer;

(b)    an intentional refusal to pay the insured's claim;

(c)    the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);

(d)    the insurer's actual knowledge of the absence of any legitimate or arguable reason; and

(e)    if the intentional failure to determine the existence of a lawful basis is relied upon, the insured must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.

*Ex parte Alfa Mut. Ins. Co.*, 799 So.2d 957, 962 (Ala. 2001); *National Security Fire & Cas. Co. v. Bowen*, 417 So.2d 179, 183 (Ala. 1982); *Cool Temp, Inc. v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 148 So.3d 448, 454-55 (Ala.Civ.App. 2013)

The third element of the tort of bad faith requires proof of the absence of legitimate reason for denying the claim. '[I]f a lawful basis for denial actually exists, the insurer, as a matter of law, cannot be held liable in an action based upon the tort of bad faith." *State Farm Fire and Cas. Co. v. Brechbill*, 144 So.3d 248, 258 (Ala. 2013) (quoting *Gulf Atlantic Life Ins.*

10

*Co. v. Barnes*, 405 So.2d 916, 924 (Ala. 1981)).  Furthermore, the Alabama Supreme Court has held that, where the "[insurer's] investigation established a legitimate or arguable reason for refusing to pay [the insured]'s claim, [that] is all that is required." *Weaver v. Allstate Insurance Co.*, 574 So.2d 771, 774 (Ala. 1990); *see also Bowers v. State Farm Mut. Auto. Ins. Co.*, 460 So.2d 1288, 1290 (Ala. 1984) ("[W]here a legitimate dispute exists as to liability, ... a tort action for bad faith refusal to pay a contractual claim will not lie.").

### a.     Partial Disability Claim

It is undisputed that over a four year period Plaintiff did not inform Defendant of the onset of his partial disability.  It is further undisputed that Plaintiff's policies required that he inform Defendant of a disability within two-to-three weeks (or within a reasonable time) of its onset.  The four-year delay in reporting the onset of his partial disability is at least a legitimate or arguable reason for denying Plaintiff's residual claim under the contracts' notice provisions.  And because Defendant had at least an arguable reason to deny the partial disability claim, Plaintiff cannot establish an essential element of his bad faith claim.  Therefore, Defendant's Motion for Summary Judgment on this issue is due to be granted.

### b.     Total Disability Claim

There is no dispute that Defendant investigated Plaintiff's total disability claim.  For Plaintiff to be entitled to unreduced total disability benefits past age 65, the cause of Plaintiff's total disability must be an accident.  As the court has already explained, Defendant's investigation into Plaintiff's total disability claim revealed conflicting expert testimony as to whether an accident or degenerative disc disease caused Plaintiff's total disability.  Thus, there is a legitimate dispute as to the cause of Plaintiff's total disability.  The medical expert testimony opining that degenerative disc disease caused Plaintiff's total disability constitutes at least a

legitimate or arguable reason for denying Plaintiff's total disability claim. And because Defendant had at least an arguable reason to deny the total disability claim, Plaintiff cannot establish an essential element of his bad faith claim. Therefore, Defendant's Motion for Summary Judgment on this issue is due to be granted.

      **D.**    **Plaintiff is Not Seeking Future Damages**

Defendant further argues that Plaintiff is not entitled to recover damages for any alleged period of disability extending beyond the date of the verdict in this case. (Doc. # 25, p. 29). Defendant is correct in its assertion that a party in Alabama cannot recover future benefits that have yet to accrue under a contract absent repudiation or breach by the obligor party. *See Box v. Metropolitan Life Ins. Co.*, 168 So. 220 (Ala. 1936). However, Plaintiff is not seeking future damages and this court will not issue what would be an advisory decision on that issue.

**V.**    **Conclusion**

For all of these reasons, the court concludes that no question of material fact exists regarding Plaintiff's claim to partial/residual disability benefits. Plaintiff has failed to provide any evidence that his delayed notice was reasonable. Plaintiff's bad faith claim also fails as a matter of law. The record establishes that Defendant had at least an arguable basis to deny both types of disability claims asserted by Plaintiff. Therefore, Plaintiff's partial motion for summary judgment is due to be denied and Defendant's partial motion for summary judgment is due to be granted.

A separate order will be issued.

**DONE** and **ORDERED** this August 11, 2016.

_____
      **R. DAVID PROCTOR**
      UNITED STATES DISTRICT JUDGE